Mark A. Nickel (Bar No. 14082)
Zachary A. Bloomer, (Bar No. 16353)
**GORDON REES SCULLY MANSUKHANI, LLP**
15 W. South Temple St., Ste. 1600
Salt Lake City, UT 84101
Telephone: (801) 204-9990
Facsimile: (385) 282-7590
mnickel@grsm.com
zbloomer@grsm.com

*Attorneys for Velocity Clinical Research, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRIANNE DRESSEN,<br><br>Plaintiff,<br><br>vs.<br><br>ASTRAZENECA AB; ASTRAZENECA PHARMACEUTICALS LP; and VELOCITY CLINICAL RESEARCH, INC.,<br><br>Defendants. | **VELOCITY'S MOTION TO DISMISS**<br><br>Case No. 2:24-CV-00337-RJS<br><br>Judge Robert J. Shelby |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Velocity Clinical Research, Inc. ("Velocity"), by and through undersigned counsel, hereby moves this Court to dismiss Plaintiff's claims against Velocity with prejudice.

In her Complaint, Plaintiff brings two causes of action against Velocity: breach of contract and breach of the duty of good faith and fair dealing. Plaintiff's claims arise out of an AstraZeneca COVID-19 vaccine that she received as part of a clinical research study conducted by AstraZeneca at Velocity's clinic. Plaintiff alleges that after receiving that vaccine, she suffered severe side-

effects, and so she seeks an award of the medical and other costs she subsequently incurred, or will incur. However, Plaintiff's claims against Velocity fail as a matter of law.

Plaintiff's claims impermissibly rely upon "group pleading" to give the false impression that *Velocity* owed Plaintiff a contractual obligation to pay her medical costs. *See, e.g.,* Complaint, ¶ 36 ("Defendant' breached of their promises . . . ."), ¶ 40 ("Defendants . . . developed an experimental COVID vaccine."), ¶ 50 ("Defendants drafted . . . ."), ¶¶ 55-56, 58 ("Defendants promised . . . ."), ¶ 56 ("Defendants defined . . . ."). However, a cursory review of the subject contract (which is attached as Exhibit A to the Complaint) reveals that *Velocity* isn't a party to that contract and didn't make any promises to Plaintiff.  Velocity was merely the "study doctor" or "study center" referred to in the contract, because Velocity's clinic is where AstraZeneca's research study was conducted.  Regardless, the subject contract is clearly between Plaintiff and AstraZeneca.

Even if we assume for the purposes of this Motion that Velocity was a party to the subject contract (it wasn't), Velocity's only colorable (possible) contractual obligation was for it, as the "study doctor," was to "provide medical treatment *or refer* [Plaintiff] for treatment" if Plaintiff "bec[a]me ill or injured while [she] [was] in th[e] research study . . . ." Exhibit A [ECF 1-1, p.13] to the Complaint, p.51; *see also* Complaint, ¶ 55. However, pursuant to the Complaint, Velocity did just that, i.e., when Plaintiff complained of "the symptoms she was experiencing" after receiving the experimental vaccine, Velocity told "[Plaintiff] to go to a [third-party] neurologist and get tested for MS." Complaint, ¶ 95. According to Plaintiff, she followed Velocity's counsel and sought out and received "testing and consultations with doctors over the next two weeks," which "ruled out MS as cause of [Plaintiff]'s condition." Complaint, ¶ 97.  So, even if Plaintiff might possibly have a colorable claim that Velocity owed her contractual duties, that claim is

defeated by Plaintiff's own allegations in her Complaint, confirming that Velocity did what it purportedly had a "duty" to do, i.e., refer her out for medical treatment. Therefore, Plaintiff's contract claims against Velocity fail as a matter of law; and Velocity respectfully requests this Court to so rule.

Similarly, Plaintiff alleges that "***Defendants*** promised that 'Sponsor will pay the costs of medical treatment for research injuries, provided that the costs are reasonable, and you did not cause the injury yourself." Complaint, ¶ 58.  However, it is clear from the contract (and from the Complaint) that ***Velocity*** never agreed to reimburse Plaintiff for any of her medical or other costs. The subject contract states as follows:

> The ***Sponsor*** has an insurance policy to cover the costs of research injuries as long as you have followed your study doctor's instructions. ***Sponsor*** will pay the costs of medical treatment for research injuries, provided that the costs are reasonable, and you did not cause the injury yourself.
>
> The U.S. National Institutes of Health (NIH) does not have a way to provide direct compensation for a research related injury.
>
> If you have medical insurance, please check with your insurance company that taking part in this research study will not affect your coverage.
>
> ***Sponsor*** may also compensate you in accordance with the law of the United States. By signing this form you do not give up any legal right you may have.

Exhibit A [ECF 1-1, p.14] to the Complaint, p.52 (emphasis added). Pursuant to the contract, "***Sponsor***" is defined as "AstraZeneca AB"—not Velocity, which, by the way, is not even referred to by name in the contract.

Even if Velocity is a party to the subject contract and even if Plaintiff pled a viable breach of contract claim that could survive a motion to dismiss, Plaintiff's claim would be barred by the PREP Act. This is because Velocity is "immune from suit and liability under Federal and State

law *with respect to **all** claims for loss* caused by, arising out of, relating to, or resulting from administration to or use by an individual of a covered countermeasure," i.e. administration of the COVID-19 vaccine. *See* 42 U.S.C.A. § 247d-6d(a)(1). It cannot be argued with a straight face that Plaintiff's claims do not arise out of, relate to, or result from the AstraZeneca vaccine that she obtained in the subject study. Yet, in her Complaint, Plaintiff tries to argue that the PREP Act only bars her from "bring[ing] a product liability action against AstraZeneca like she could if it were a standard pharmaceutical." Complaint, ¶ 32. However, the PREP Act clearly and unequivocally applies to "all claims for loss"—not just product liability claims.

Even if Plaintiff pled a viable breach of contract claim against Velocity and even if the PREP Act didn't bar that claim, Plaintiff's breach of contract claims against Velocity still fail as a matter of law. This is because, pursuant to the subject Contract, Plaintiff's damages are limited to the "cost of medical treatment for research injuries." However, as discussed above, Velocity never agreed to pay Plaintiff's medical costs.

For any one or more of the foregoing reasons, Velocity respectfully requests this Court to dismiss Velocity with prejudice.

**PLAINTIFF'S ALLEGED FACTS**

During the early stages of the COVID pandemic, the U.S. Secretary of Health and Human Services, Secretary Alex M. Azar II, declared the pandemic a "public health emergency." *See* 85 Fed. Reg. at 15, 198; *see also* Complaint, ¶¶ 4, 32, 62. In that same declaration, the pandemic was classified as a "significant public health challenge that require[d] a sustained, coordinated proactive response by the Government." 85 Fed. Reg. at 15, 198. In furtherance of the Government's position, it urged the "manufacture [and] testing" of COVID-19 vaccines and activated the Public Readiness and Emergency Preparedness Act ("PREP Act"). *Id* at 15, 201-202;

*see also* Complaint, ¶¶ 32,62. In late 2020, AstraZeneca conducted a clinical trial for a COVID-19 vaccine that was to be administered by Velocity, in Salt Lake County, Utah. *See* Complaint, ¶¶ 6, 43.

Plaintiff alleges that on November 4, 2020, she went to Velocity's clinic to enroll in AstraZeneca's clinical trial for the COVID-19 vaccine. *Id. at* ¶¶ 64, 67-68. Following Plaintiff's enrollment, she received the AstraZeneca vaccine. *Id* at ¶ 68. Thereafter, Plaintiff alleged that she began "experiencing a tingling and prickling feeling in her right arm" which continued to spread throughout her arm. *Id.* at ¶ 70. She then began to have other symptoms, "including a headache, blurred vision, a loud ringing in her ears [], nausea, fever, and a sensitivity to sound." *Id*. Although her fever subsided the following day, the other symptoms continued. *Id.* at ¶ 71. On November 5, 2020, the day after Plaintiff received the vaccine, she called Velocity, who then ask Plaintiff to come in for an evaluation. *Id.* at ¶ 94. Plaintiff then went back to the Velocity clinic on November 6, 2020, and at that time, Velocity referred Plaintiff to a third-party neurologist for testing for multiple sclerosis ("MS"). *Id.* at ¶ 95.

Over time, Plaintiff alleges that her symptoms became worse, and so she sought medical attention from various medical professionals who diagnosed a variety of potential illnesses, including "paresthesia," *Id.* at ¶ 73; a "vaccine reaction," *id*.; "immunization reaction," *Id.* at ¶ 75; postal orthostatic tachycardia ("POTS"), *Id.* at ¶ 84; "post-vaccine neuropathy," *id*.; "Post Acute Covid Vaccine Syndrome," *Id.* at ¶ 88; and "vaccine-induced demyelinating disease," *Id.* at ¶ 92.

Today, although some of Plaintiff's symptoms have "improved," Plaintiff alleges that she is "unable to work, unable to do any athletic activity, unable to parent the way she had, and unable to drive more than a few blocks at a time." *Id.* at ¶ 18. Plaintiff further alleges that in addition to

her past damages, she will need future medical assistance and costs for "appointments, prescription medications, various forms of therapy, and aids for independent function." *Id.* at ¶ 162.

As a condition of participation in the clinical trial, Plaintiff received a copy of an Informed Consent Form, attached as Exhibit A to the Complaint ("ICF"),[1] which Plaintiff refers to as a contract. The ICF identified the "procedures . . . the potential side effects . . . and what would happen in the event [Plaintiff] suffered a serious adverse reaction during the trial." *Id.* at ¶ 8, 50, 65. More specifically, the ICF provided explicit terms related to "[c]ompensation for study related injury" and identified a singular obligation of the "study doctor" related to study injuries:

> If you become ill or are injured while you are in this research study, you must tell your study doctor straight away. The study doctor will provide medical treatment ***or refer you for treatment***.

*Id.* at ¶ 9; *see also* ICF, p.12 (emphasis added). The "study doctor" is defined as a "doctor [] paid by the sponsor to conduct this research study." *See* ICF, p.1. In this particular instance, the study doctor was Dr. Barbara Rizzardi, who was employed by Velocity. *See* Complaint, ¶ 95. Following the Plaintiff's disclosure of her injury, Dr. Rizzardi met with and evaluated Plaintiff's condition, and then referred her to a neurological specialist. *Id.* at ¶ 95.

The ICF also identified what Plaintiff may be entitled to receive from AstraZeneca, "[i]mportantly, the consent form [ICF] promised that AstraZeneca would 'cover the costs' if a participant suffered a 'research injury….' *Id.* at ¶ 9. More specifically, the ICF stated:

> The Sponsor has an insurance policy to cover the costs of research injuries as long as you have followed our study doctor's instructions. Sponsor will pay the ***costs of medical treatment*** for research injuries, provided that the costs are reasonable, and you did not cause the injury yourself.

---

[1] The ICF is attached as Exhibit A to Plaintiff's Complaint [ECF-1-1].

*Id.* at ¶ 9; *see also* ICF, p.12 (emphasis added). The "Sponsor" is defined as AstraZeneca AB. *See* ICF, p.1. However, the ICF also referenced the March 2020 PREP Act Declaration and that Plaintiff's remedies for research injuries may be limited by law:

> Due to the coronavirus public health crisis, the federal government has issued an order that *may limit your right to sue* if you are injured or harmed while participating in this COVID-19-related clinical study.

*See* Complaint, ¶ 61; *see also* ICF, p.13 (emphasis added). Plaintiff, having agreed to the above limitations, signed the ICF. *Id.* at ¶ 68.

Following Plaintiff's first evaluation performed by Dr. Barbara Rizzardi at Velocity on November 6, 2020 (*id.* at ¶ 95) and her second evaluation on November 18, 2020 (*id.* at ¶ 98), Plaintiff alleges she sought assistance directly from "AstraZeneca and its research team," but that none was provided (*id.* at ¶ 19. Plaintiff further alleges that, thereafter, she asked Velocity to advocate for assistance from AstraZeneca (*id.* at ¶¶ 101, 105, 112). Plaintiff did so because she clearly understood that Velocity was not contractually obligated to pay her medical costs.

Plaintiff initiated this action on May 13, 2024, and asserted two causes of action against both AstraZeneca and Velocity. Plaintiff's first cause of action is for breach of contract, alleging that the ICF was a contract for which "Defendants" were required to "(1) to 'cover the costs' of the research injury . . . and (2) to provide medical care and/or *refer* Plaintiff for medical care." *Id.* at ¶ 181 (emphasis added). Plaintiff alleges that "Defendants" breached those alleged obligations and "delayed and denied the provision of timely medical care." *Id.* at ¶ 182.

Interestingly, Plaintiff seeks the same relief for both causes of action, from both Defendants, for economic and non-economic damages, including emotional damages. *Id.* at ¶¶ 184, 189. More specifically, Plaintiff seeks "past and future medical expenses, past and future loss of household services, childcare expenses, past and future lost income, [] past and future

transportation costs," "emotional damages," and "attorneys fees…." *Id.* at ¶¶ 162-169, 174-177, Prayer for Relief ¶¶ 1-3.

## STANDARD OF REVIEW

A motion to dismiss "under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the plaintiff's complaint." *Braun v. United States*, No. 1:22-cv-00108-RJS-CMR, 2023 WL 6158943, at *4 (D. Utah Sept. 21, 2023) (unpublished). To survive dismissal under Rule 12(b)(6), a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court must accept as true all well-pled factual allegations in a complaint, it "need not accept '[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements,' or allegations plainly contradicted by properly considered documents or exhibits." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Kerr v. Polis*, 20 F.4th 686, 700 n.9 (10th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Additionally, a plaintiff cannot rely on "group pleading" when the "plaintiff fails to distinguish among multiple defendants, including on claims that could not apply to certain defendants." *L5L Industries, Inc. v. Kiss Industries, LLC*, 2022 WL 704705, at *2 (D.Colo. 2022).

"A court may resolve a motion to dismiss under Rule 12(b)(6) on the basis of an affirmative defense, such as the statute of limitations or statutory immunity, when the facts establishing the defense are apparent on the face of the complaint." *Silver v. Quora, Inc.*, No. CV 15-830, 2016 WL 9777159, at *2 (D.N.M. June 13, 2016) (unpublished), *aff'd*, 666 F. App'x 727 (10th Cir. 2016) (not selected for publication). "Generally, the sufficiency of a complaint

must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). However, the court may consider documents referred to in the complaint if they "are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Total Quality Sys., Inc. v. Universal Synaptics Corp.*, 679 F. Supp. 3d 1196, 1208 (D. Utah 2023). When a Plaintiff attaches "an undisputed copy of the parties . . . Agreement to its Complaint, which is central to its breach of contract claim, the court can properly consider the agreement without exceeding the scope of Rule 12(b)(6). *Id.* "[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *Matney v. Barrick Gold of N. Am.,* 80 F.4th 1136, 1145 (10th Cir. 2023).

## ARGUMENT

I.  **VELOCITY WAS NOT A PARTY TO THE ICF, AND EVEN IF IT WAS, PLAINTIFF ADMITS THAT VELOCITY FULLY PERFORMED**

   a.  **Velocity was not a party to the ICF.**

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Surgenex, LLC v. Predictive Therapeutics, LLC*, 462 F. Supp. 3d 1160, 1168 (D. Utah 2020). Therefore, in order for a plaintiff to survive a motion to dismiss, the plaintiff must "plead sufficient factual content to plausibly allege that a contract existed between" the plaintiff and defendant. *Id.* at ¶ 2. "[A]s a general rule, none is liable upon a contract ***except*** those who are parties to it." *Id.* (emphasis added). Even in circumstances where an agent has breached on behalf of its principal, "agents cannot be held liable for the contractual breaches of their principals." *Id. at ¶* 4. When an agent "d[oes] not undertake any obligations in [its] ***individual*** capacity, [it] cannot be held liable for any of the alleged breaches." *Id.* at ¶ 3 (emphasis added).

Here, Plaintiff has alleged that the ICF became a binding contract when Plaintiff received the experimental vaccine. *Id.* at ¶ 179. Although Plaintiff has generally pled that all of the Defendants were mutually obligated under the ICF, nowhere in the ICF did Velocity agree to accept AstraZeneca's contractual obligations. In fact, the ICF never mentions Velocity's name, but rather, generically identifies it as a "study center." *Id.*; *see also id.* pp.2, 9, 15, 21. At best, the ICF generally refers to "study doctor," which could apply to Velocity or its employee, Dr. Barbara E. Rizzardi. *Id*. pp.1-2. For example, the ICF states: "Your ***study doctor*** will be paid by the sponsor to conduct this research." *Id*. In describing the role of the study doctor, the ICF states that she will administer the clinical study and advise on follow-up care. *Id.* at p.8.

Velocity's role as the "study doctor" stems from its relationship with the Sponsor, i.e., AstraZeneca—not with Plaintiff. Plaintiff did not make any allegation suggesting that Velocity and Plaintiff had a meeting of the minds concerning the payment of medical costs or any other term found in the ICF. It was Plaintiff and AstraZeneca that entered into that formal arrangement. Therefore, Plaintiff's claim that she entered into a contract with Velocity fails as a matter of law.

      **b.**      **Plaintiff concedes that Velocity's sole colorable contractual obligation was not breached.**

Even if this Court determines that the ICF was a contract and that Velocity was somehow a party to that contract, Plaintiff's only allegation that could be attributed directly against Velocity relates to the following provision of the ICF:

> If you become ill or are injured while you are in this research study, you must tell your study doctor straight away. The study doctor will provide medical treatment ***or refer you for treatment***.

ICF, p.12 (emphasis added); *see also* Complaint, ¶ 9. Throughout her Complaint, Plaintiff alleges that Velocity breached this provision of the ICF. *See, e.g.,* Complaint, ¶¶ 9, 20, 55, 93, 102, 159, 181. However, notably, Plaintiff's Complaint admits that Velocity fulfilled this obligation by

referring Plaintiff to outside medical assistance, within two days of receiving the experimental vaccine:

> 95. At the end of the November 6 evaluation, Velocity's lead investigator, Dr. Barabra Rizzardi, told Bri she may have Multiple Sclerosis ("MS"). Dr. Rizzardi told Bri to go to a neurologist and get tested for MS.

*Id.* at ¶ 95. In plain terms, two days after receiving the first dose of the experimental vaccine, Velocity **referred** Plaintiff to a neurologist for diagnosis and treatment of her symptoms. *Id*. It is noteworthy that Plaintiff concedes that when Velocity referred her to a neurologist, Velocity didn't know whether Plaintiff had received the vaccine or a placebo. *See* Complaint, ¶¶ 103-104.

Velocity then continued to advocate for Plaintiff by: "contact[ing] AstraZeneca and ask[ing] for their input," *Id.* at ¶ 96, performing "two nasal swab tests and a blood draw to test for COVID" (*id.* at ¶ 100), checking with AstraZeneca on whether Plaintiff received the vaccine or a placebo (*id.* at ¶ 103), following up with Plaintiff when Velocity received information from AstraZeneca (*id.* at ¶ 104), responding to Plaintiff's communications (*id.* at ¶ 108), following up with AstraZeneca (*id.*), and volunteering to forward medical bills to AstraZeneca (*id.* at ¶ 111). This continued for months, and in March 2021, in response to Plaintiff's plea for help, Velocity responded as follows: "Hi Brianne, I am escalating this for you. I do not understand why it is taking so long. I am trying again. I am hopeful we should hear something soon!! I am so sorry it has taken so long!!" *Id*. at ¶ 113. In April 2021, Velocity continued to request bills so that they could be forward to AstraZeneca. *Id*. at ¶ 116. In May 2021, Velocity again tried to make contact with AstraZeneca on Plaintiff's behalf. *Id*. at ¶ 120. Velocity even provided Plaintiff with the contact information for AstraZeneca's legal department. *Id*. at ¶ 123.

According to Plaintiff, Velocity's only obligation was to "provide medical treatment **or refer you for treatment** . . . ." *Id*. at ¶ 9; *see also* ICF, p.12 (emphasis added). Pursuant to the

additional allegations in Plaintiff's Complaint, at a minimum, Velocity performed this alleged obligation. Therefore, Plaintiff's claims against Velocity fail as a matter of law and must be dismissed.

## II.     PLAINTIFF'S COMPLAINT IS BARRED BY THE PREP ACT

For the sake of brevity, Velocity incorporates herein the arguments that AstraZeneca made at pages 9 through 16 in its motion to dismiss [ECF 24], as if the case law and arguments made therein were fully restated herein. AstraZeneca's arguments concerning the Prep Act apply equally to Plaintiff's claims against Velocity. This is because Velocity is a "covered person," which is defined as "a qualified person who prescribed, administered, or dispensed [a] countermeasure" or an agent of a manufacturer or distributor of a countermeasure. *See* 42 U.S.C. § 247d-6d(i)(2). The phrase "countermeasure" is defined, in relevant part, as "any antiviral, any other drug, any biologic, any diagnostic, any other device, or ***any vaccine***, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom." 85 Fed. Reg. at 15,202 (emphasis added); *see* 42 U.S.C. § 247d-6d(i)(1), (i)(7) (defining "covered countermeasure"). The definition extends to products "authorized for investigational or emergency use." 85 Fed. Reg. at 15,202; *see* 42 U.S.C. § 247d-6d(i)(7)(B)(ii) (defining a category of covered countermeasure as including products in clinical trials under section 505(i) of the Federal Food, Drug & Cosmetic Act, 21 U.S.C. § 355(i)).

Because Velocity administered the subject COVID-19 vaccine to Plaintiff, Velocity is "immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C.A. § 247d-6d(a)(1). This immunity applies to "any claim for loss that has a causal relationship with the administration to or use by an individual

of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure." 42 U.S.C.A. § 247d-6d(a)(2)(B). Accordingly, Plaintiff's claims against Velocity fail as a matter of law.

### III.   PLAINTIFF'S CLAIMS ARE TIME BARRED

Velocity incorporates herein the arguments that AstraZeneca made at pages 16 through 19 in its motion to dismiss [ECF 24], as if the case law and arguments made therein were fully restated herein. AstraZeneca's arguments made therein apply equally to Plaintiff's claims against Velocity. In short, Plaintiff's claims are barred by the two-year statute of limitations applicable to product liability claims under Utah law. *See* Utah Code Ann. § 78B-6-706.

### IV.   PLAINTIFF IS NOT ENTITLED TO RECOVER ANY DAMAGES FROM VELOCITY

Velocity incorporates herein the arguments that AstraZeneca made at pages 19 through 24 in its motion to dismiss [ECF 24], as if the case law and arguments made therein were fully restated herein. AstraZeneca's arguments made therein apply equally to Plaintiff's claims against Velocity. In addition to those arguments, Plaintiff should also be barred from recovering any amount of money from Velocity because it has no contractual obligation to reimburse Plaintiff for any medical costs, expenses, attorneys' fees, court costs, or other damages incurred by Plaintiff. Indeed, it is clear from the ICF that *Velocity* never agreed to reimburse Plaintiff for any expense she might incur. The ICF provides as follows:

> The *Sponsor* has an insurance policy to cover the costs of research injuries as long as you have followed your study doctor´s instructions. *Sponsor* will pay the costs of medical treatment for research injuries, provided that the costs are reasonable, and you did not cause the injury yourself.

> The U.S. National Institutes of Health (NIH) does not have a way to provide direct compensation for a research related injury.
>
> If you have medical insurance, please check with your insurance company that taking part in this research study will not affect your coverage.
>
> *Sponsor* may also compensate you in accordance with the law of the United States. By signing this form you do not give up any legal right you may have.

Exhibit A [ECF 1-1, p.14] to the Complaint, p.52 (emphasis added). Pursuant to the ICF, "*Sponsor*" is defined as "AstraZeneca AB"—not Velocity. Therefore, Plaintiff must be barred from recovering from Velocity.

## CONCLUSION

For the reasons set forth above, Velocity respectfully requests that this Court grant its Motion to Dismiss Plaintiff's Complaint in its entirety with prejudice.

**DATED** this 12th day of July 2024.

        **GORDON REES SCULLY MANSUKHANI, LLP**

        */s/ Zachary A. Bloomer*
        Mark A. Nickel
        Zachary A. Bloomer

        *Attorneys for Velocity Clinical Research, Inc*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of July 2024, a copy of the foregoing **VELOCITY'S MOTION TO DISMISS** was filed electronically with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will send an electronic copy of this filing to all counsel of record.

*/s/ Zachary A. Bloomer*